United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is open according to law. God save the United States and this honorable court. Good morning. This is Judge Wilson in Tampa. Judge Rosenbaum is in Fort Lauderdale and Judge Ho is in Atlanta. And we have four appeals that are scheduled for oral arguments this morning. I would advise counsel that we have read the briefs. We've examined the record. That will assist you in narrowing your arguments for the limited time that you have available this morning to present your arguments. Ms. Tisa is the courtroom deputy and she will serve as the timekeeper. And she will provide you with a two-minute warning when your time to argue is about to expire. And she will also advise you when your time to argue has expired. So it appears that the lawyers in the first case are ready to present their arguments. First case is the United States of America versus Brandon Michael Fleury. Ashley Litwin is here for the appellate Fleury. Daniel Mattson is here for the United States. And Ms. Litwin, you may begin your argument. I'm sorry. Mr. That's right. Ms. Litwin is here for the appellate. May it please the court. Ashley Litwin on behalf of Brandon Fleury. The posts in this case were unambiguously cruel. But the question before this court is not whether or not these posts were ugly speech or even frightening. The question is whether Brandon, a 22-year-old with autism spectrum disorder, intended to threaten anyone with these posts. All parties agree that the cyberstalking statute is only constitutional as applied to Brandon's speech if those posts were true threats. So the question before this court is whether or not a reasonable person objective standard is enough to find a true threat to take it outside the protections of the First Amendment or whether a subjective intent to threaten is required, which is an open question before this court. And based upon Virginia v. Black and Alanis v. United is required for Brandon's pure speech to be taken outside the First Amendment protections. As this court is well aware, Virginia v. Black found that true threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence. And the court in Virginia v. Black was very clear that the reason a subjective intent requirement was required was because the First Amendment does not allow for any shortcuts. And other circuits since then have found that Virginia v. Black requires a defendant to subjectively intend to threaten someone for any speech to be taken for any threat to hold a conviction under any threat statute that criminalizes pure speech. The Ninth Circuit found that a subjective analysis is always required when determining whether a threat falls outside the protections of the First Amendment. The Tenth Circuit found that speech is unprotected by the First Amendment only if the defendant intended the recipient to feel threatened. And the Seventh Circuit in dicta, while not finding what what Virginia v. Black really said, it said that it's pretty that it's in it that it's likely that an entirely objective standard is no longer tenable. This court should agree with those circuits, especially here based upon the statute and the facts of this particular case. The cyber stalking statute discussed here deals with the internet and trolling. Ms. Littman, let me interrupt you because I do feel that the jury instruction issue is probably the strongest issue that you have presented on appeal. My question is, how was the case presented to the jury? I mean, was it what the jury instructions were resolved after the presentation of the evidence to the jury? How did Mr. Flory's attorney argue the matter to the jury? Did he argue that you have to look at the threat to determine whether or not it's a true threat from the perspective of the person making the threat or from the perspective of the victim receiving the threat? Because Mr. Flory didn't testify at the trial, did he? He did not, Your Honor. All three victims testified at the trial. So I'm assuming that those witnesses, their testimony focused on whether or not they perceived the threat as a threat, right? Yes, Your Honor. That was the bulk of their testimony that they felt very threatened. How did Flory's attorney argue the case to the jury? Well, Your Honor, the jury instructions were decided before closing argument. But as to count one, there was a subjective intent requirement. But as to count two, it was only an intent to harass, was the only substantive intent that was required. And so he argued both in closing arguments. He argued that Brandon did not have the intent to threaten, but also that they should look at the messages and that they were not true the present tense or the way that the messages were done was not threatening. But what's notable is the government in its closing told the jury that it could find Brandon guilty of counts two, three, and four based solely on an intent to harass and discusses a number of messages that only would show harassment, such as gonna cry, messages about not being able to play music anymore. Again, messages that are cool, but not threatening in any way, shape, or form. And also, you know, as this court has been very clear to say in many times, the jury instructions tell the jury to ignore the arguments of counsel and to focus on the instructions. Also, counts two, three, and four required a course of conduct. So again, they required more than one message to look at in order to determine whether or not to find threatening. Let me ask you why I have some problem with your argument. And that is Virginia v. Black, there was an intent to intimidate, that was the statue there, and it was a cross, right? Yes, Your Honor, it could have been intent to harass or intent to intimidate in that statue, and it was a cross, right? Your Honor, I'm sorry, I don't understand what you mean by a cross. Well, I mean, the object there was a cross that was conveying the threat, I think. Oh, yes, yes, yes. I'm sorry. Yes. Here are the words of the truth that's true threats. And what I want to say is, we know what the definition of true threat is. True threat is that it's from the person receiving it's objective standard. You don't disagree with that, right? Of what constitutes a true threat? Well, Your Honor, I do disagree with that. I think for something to be a true threat, it needs a subjective intent to threaten in order to take it outside of the protections of the First Amendment. Okay, maybe that's where I did. I think there's two things going on here. One is mens rea for the statute to survive constitutional scrutiny. And then there's another thing that the message itself has got to be a true threat. And that's an objective test. Let's try it that way. The message itself has got to be a true threat. And that's an objective test. No, Your Honor. I mean, I don't I don't. I do disagree. I think the what his disability or his mental state is really part of the mens rea of the case and what you need in order to make a true threat case come out would be okay, constitutionally. Well, Your Honor, if you look at both Virginia v. Black and Alanis, they discussed that you need the mens rea for the most important part. Look at the language. Alanis says that you want you need the culpability on the all important element of the crime. And here because what takes this pure speech outside the protections of the First Amendment is the fact that it's a true threat. So you need the mens rea on the true threat, counsel. The thing is, Alanis was a case involving a statute that did not specify what the mens rea was. And so that's why the court put the mens rea where it did. But in this case, the mens rea is specified in the statute. Does that make a difference at all? And if not, why not? Your Honor, it doesn't make a difference in this particular case because the mens rea that's specified allows for an intent to harass, which would not pull it outside of First Amendment protection. There is no harassment exception to the First Amendment. And that is extremely important. If you actually if you look at the white both of the white cases, the 11th Circuit white case and the Fourth Circuit white case, which discussed how Alanis should be interpreted when looking at other cases, they both explain that they look at an intent to extort statute. And they say that because when you define intent to extort, it includes an intent to threaten, that that satisfies Alanis. But here we don't have that. Intent to harass was defined as the specific intent or purpose of causing an adverse emotional reaction in a specific person. And you had messages such as that the government relied on going to cry or your grief is by joy. And those messages in of itself do not take it outside of the protections of the First Amendment, which is extremely important in this case because not only based upon the evidence that was presented that Brandon might not have had specific intent, but also because trolling in general is so ubiquitous, and we need something more, a specific intent to threaten. Otherwise, it's going to criminalize so much pure speech. Okay, so what you're saying, if the government proves, because this is what I thought, the general principle from the cases was that if you have an intent to harass and cause grief, so assume that you've proven an intent to harass and cause grief because he did understand and he said he knew this was causing grief. Okay. So and was harassing. It was annoying. He admitted he knew it was annoying. He knew it was harassed. I mean, he admitted that. Okay. Yes, Your Honor. I mean, trolling speech by definition is harassing. Well, well, but the question then to me is, if you have intent to harass and cause grief, with objective true threats, can you criminalize that? Or is that not enough to survive constitutional scrutiny? And you're saying that's not enough. That can't be a crime. Yes, Your Honor. I'm saying that. I don't think it's outside the protections of the First Amendment. Right. I don't think any case directly answers that out of all these cases. For the reason Judge Rosenbaum said one of them alone is there was no mens rea. This statute has a mens rea. It has not just a general intent mens rea. It has a specific intent mens rea. Okay. So we've got a specific intent mens rea in the statute, intent to harass and cause grief. And it has to be coupled with objective threats. And you say that's not wouldn't be constitutional, you have to go further and say it's an ad the threat, you have to have a greater special intent than the statute provides. Yes, Your Honor, in order to take it outside of the First Amendment protections, you do need more of a mens rea than just an intent to harass, especially when dealing with the cyber stalking statute, which because there's so much trolling on the internet, it's created a new world. And people constantly are posting things of high school kicker could miss a field goal. And all sudden he gets all sorts of trolling comments on his posts on his Instagram page, they would, it would subsume so much speech, if we don't require an intent to threaten. And Virginia v. Black, I do actually believe holds this, there are a number of circuits that have found, Your Honor, that Virginia v. Black, which I discussed the ninth, the 10th, the seventh that Virginia v. Black requires a subjective intent for all true threats to be taken outside of the First Amendment. So it would be following those circuits, Your Honor. All right. Thank you, Ms. Litwin. You've reserved some time for rebuttal. And we'll hear from Mr. Matzkin on behalf of the government. Good morning, Your Honors, may please the court Dan Matzkin on behalf of the United States. This court should affirm the convictions in this case, because the view of First Amendment law that Mr. Flurry advocates here is both legally unsound and practically unworkable. No, and nowhere do those defects become more apparent than in the analysis of the subjective intent issue that Your Honors have been discussing. It's worth noting that, as a preliminary matter, that this particular issue has been raised in the context of instructional error. And so here, the question of whether a true threat requires subjective intent, although an intellectually intriguing one, is not necessarily one that the court needs to resolve here today. Because we know that the jury concluded that Mr. Flurry had the subjective intent to threaten us to count one. How do we know that from the record, Mr. Matzkin? So there's no dispute that as to count one, which was the 875-C count, the jury was properly instructed in accordance with the lonus that it had to find subjective intent. I think my friend on the other side conceded as much a few minutes ago. And the gist of Mr. Flurry's defense here was that he not only didn't have, but also couldn't form the intent to communicate true threats. So with respect to intent, the jury really was faced with a binary question, whether Flurry had the subjective intent to communicate true threats or not. And the jury concluded that he did, as the section 875-C count charged him count one. And so having found as much, it would be highly incongruous, and we would venture to say almost inconceivable, given the way the case was tried, that the jury would have found subjective intent as to section 875-C and not as to 2261-A2B. Why isn't his theory of defense instruction consistent with his theory of defense? I'm sorry, I'm not sure I understand the question. The instruction that he requested is consistent with what the Supreme Court set forth in the statute. It's got to be from the perspective of the person making the threat rather than the victim receiving the threat in order for the jury to determine whether or not it's a true threat. That was his theory of defense. He asked for that instruction. It's consistent with Alonis, and the instruction was not given. Right. So again, as a preliminary matter, that instruction was given as to count one. And given that all the threats in this case arose from the same course of conduct, there's no reason to suppose that the jury did find that as to count one and would not have found that as to count two through four had it been so instructed. I'm turning to the merits. Counsel, I'm sorry, before you turn to that, what about, I mean, I think it's an interesting logical proposition that you're making, but what about the case law that talks about how and even though the verdict here is consistent, I mean, wouldn't that case law suggest that we can't take whatever was found on count one and apply it as necessarily having been found on the rest of the counts? And if not, why? Right. Fair question, Your Honor. And I think the answer boils down to the way the case was tried. I mean, Mr. Fleury's defense was essentially an all or nothing one. I mean, this would be a different case if he had essentially stipulated that as to count one, he did or might've had the subjective intent, but didn't as to count two through four. I mean, Mr. Fleury really put all his eggs in one basket and said, he didn't have it and he wasn't able to form it whatsoever. And so, taken alone, we're not suggesting that the issue is dispositive, but in conjunction with the evidence that was presented, in our view, it would be highly incongruous to suppose or to presume an inconsistent verdict here. Turning to the merits then, we would ask the court- But before you leave count one in the jury instruction, I'm looking at it and it says, he can be found guilty only if he proved beyond a reasonable doubt. He knowingly said a message containing a true threat. Okay. And then two, the defendant sent the message with the intent to communicate a true threat or with a knowledge that it would be viewed as a true threat. So you're saying that's the subjective threat intent satisfied. Prong two, and that's what you're saying? That she said was missing. That's exactly right. And given that the threats in this case all arise again from the same course of conduct, it would be highly incongruous to suppose that the jury would have found subjective intent as to count one and not as to count two through four, which could have been predicated on the exact same threats. I'm sorry, Judge Wilson, was there a question? You've answered my question. Oh, okay. Thank you. Now, should your honors choose to reach the merits of this issue, we would ask the court to say for a third and decisive time what it's already said twice. First, in its published opinion in Martinez, which was vacated post aloneness, and then in its unpublished opinion in White, which was issued post aloneness. And that is that a conviction for a true threat does not require a showing of subjective intent to threaten. The Supreme Court's choice to classify threats as unprotected speech reflects a categorical judgment that very limited legitimate expressive value of such speech gives way to the right of the recipient and society as a whole not to be subjected to the harms that flow from those threats, the fear of violence, the disruption stemming from that fear, and the possibility that the violence might occur. And it's noteworthy that other areas of unprotected speech, specifically fighting words and obscenity, don't require proof of subjective intent. You know, as with those categories of unprotected speech, the subjective intent standard would ignore the reality that the harms flow from the speech itself. It's worth noting that nowhere, as I think the court pointed out, in either Black or aloneness, did the Supreme Court impose a subjective, explicitly certainly imposed a subjective intent standard. Before aloneness, this court held in Martinez that Black didn't import a subjective intent requirement into the true threats doctrine, generally speaking, much less into all statutes prohibiting threats. Black was a case primarily about the overbreath of a specific statute, not whether a subjective or objective analysis always governs in the abstract. And aloneness, as I think Judge Rosenbaum pointed out, was a statute dealing with statutory disclaims the notion that it was reaching any First Amendment issues in its analysis. With that, I'm happy to address any other questions that your honors have. If there are none, we ask that your honors affirm Mr. Flurry's convictions in this case. We have your argument, Mr. Maskin and Ms. Litwin, you reserve some time for rebuttal. Thank you, your honor. First, I'll address the harmless error issue. It's not harmless. So if the court finds that a subjective intent to threaten is necessary for Brandon's pure speech on counts two, three, and four, or just for it to be protected by the First Amendment, then as Judge Wilson, you said, then it should also find it was an error not to give the theory of defense instruction. Because it was a true statement of the law under Virginia v. Black, it was not adequately covered in the instructions. This definition of true threat under Black was never given anywhere. There was no subjective intent requirement in the cyberstalking statutes. And it doesn't give his actual theory of defense, which was that he did not subjectively intend to threaten somebody. That was his defense. And he was entitled to have the theory of defense instruction show that. Also, when you put the subjective and the objective together, it is confusing. The instruction for 875, the comments that was used for count one, say that after aloneness, it did not foreclose the possibility that both an objective and subjective standard can be used together. But that's not a ringing endorsement that it wasn't foreclosed by aloneness. And it was confusing, it was confusing to the jury. And without a theory of defense instruction, it was confusing to the jury what the defense actually was. But more specifically, count one was based solely on one message, this Teddy Kills message that said, I'm your abductor, I'm kidnapping you fool. Count two, three, and four require a course of conduct, which was defined in the instruction as a pattern of conduct composed of two or more acts. So it couldn't just be based upon the one kidnapping message. And the government's disclosing discusses numerous different messages that could have that the jury could use to find him guilty of count two, three, and four. Different, again, from count one, because count one just required this one kidnapping. That alone would not be enough to find him guilty of counts two, three, and four, which require a course of conduct. In the jury's court- Do you agree that prong two of the instruction on count one has the specific intent that you say is necessary for count one? Yes, Your Honor, after Lonis, that the specific intent, I mean, Your Honor, it's not the instruction that was requested. There's nothing wrong with count one jury instruction. Well, Your Honor, yes, I mean, we, the government, the defense asked for the true threat definition that was put in in Virginia v. Black. And we, the defense, it should have been given, it's a true statement of the law. It's less confusing than the objective and subjective standard. I'm not understanding your argument is count one. I'm looking at it says a true threat is a serious threat, not idle talk, a careless remark, or something jokingly. It must be made under circumstances that would place a reasonable person in fear of being kidnapped. I mean, that's the definition of a true threat, right? Well, Your Honor, what was requested was the is a statement where the speaker means to communicate a serious expression of intent to commit an act of unlawful violence to a particular individual or group of individuals. That was the instruction that was requested by defense counsel. And that instruction was not given for count one either. So we also had objected to, we've objected to the definition that was given in count one, because it's not consistent with Virginia v. Black. But even though I think I think other courts have approved that as the instruction as to a definition of true threat, I think you can state it lots of ways. And I think that's one permissible way. But that's just me. I'm just dealing with count one. But the intent part is there you don't object to how they said the intent, the defendants of the message with the intent to communicate a true threat, or with the knowledge that it would be viewed as a true threat that conveyed your specific intent to threaten, right? Yes, Your Honor, there was a subjective intent in there. But because there was this objective intent standard as well, it was confusing, which is why the theory of defense instruction was necessary to explain what his actual defense was. But Your Honor, even though there was a specific intent, part of count one, again, that specific intent only went to one message by Teddy kills people, and counts two, three and four require two messages, a course of conduct. So it actually is a different finding by the jury. And because this is a constitutional question, if there's any evidence to support the possibility that this different instruction mattered, then the court should find that it's not harmless. It's not directly on point, but ACLU versus Miami Dade School Board, which was cited to in the briefs for the sufficiency of the evidence argument, explains how when we're dealing with constitutional questions, facts relating to whether or not something is protected or not protected, that it's more important that the court should give it more consideration that this court that appellate court should look at it more carefully. In that case, it was saying that we think this court shouldn't give deference to district courts and juries. But I think the same principle applies here, that this subjective intent was required in order to pull the stat make the statute constitutional, especially here where Brandon was not even indicted based upon true threats. He was indicted only because his messages cause substantial emotional distress. And therefore, we would ask based upon the theory of defense instruction, based upon the subjective intent that was not given, and based upon the fact that the Virginia v. Black instruction was not given, the Virginia v. Black definition of true threat was not given in any of the instructions, that it was confusing and wrong and unconstitutional. All right. Thank you, Ms. Litwin and Mr. Matzkin. Thank you, Your Honor.